The Honorable the Judges of the United States Court of Appeals for the Fourth Circuit. May it please the Court. My name is Daniel Lader on behalf of Appellant Brian McLane. And the relevant background facts of this case are more or less straightforward. This case arrived at the Tax Board pursuant to a Notice of Determination and a CDP Collection Due Process hearing. However, Appellant, and this point is not disputed, fell into the rare category of individuals who had not had a prior opportunity to dispute the asserted tax by the IRS. What happened was the Appellant self-reported his tax liability for 2008 of approximately $2,000. The IRS subsequently audited the Appellant and made adjustments, asserting he owed approximately $20,000 in excess of what he reported. However, when the IRS issued the Notice of Deficiency, it was attempted to be delivered one time and returned to sender, never actually having made it to Appellant Brian McLane. So, therefore, because mailing of the Notice of Deficiency is legally effective to allow the IRS to make an assessment, which is a recording of liability owed, that process occurred without the Appellant ever being able to go to tax court and directly challenging the alleged deficiency in a prepayment form. However, because of the CDP… So, Mr. Lader, can I ask you about that? So, what's the legal significance of that with respect to the initial overpayment by your client? Are you saying that had he had that notice, he then could have, I guess there's two different, he could have or would have not only challenged the deficiency, but at that point the light bulb would have gone off and he would have realized that he had overpaid the IRS? Well, Your Honor, what happens is as soon as a taxpayer does challenge a Notice of Deficiency and goes to tax court properly, timely filing a petition, Section 6512 says that the mailing of the Notice of Deficiency kickstarts the refund process and is treated as an imputed refund claim. And it specifically says in a parenthetical whether or not the refund claim was actually filed. And this is a well-crafted scheme within the code that essentially balances the playing field because the IRS at this point has to decide if we're going to assert this alleged extra amount owed, this is going to open the entire year. And it necessarily has to because as we all know, taxes can be very complicated involving, you know, multiple different areas of income. Sometimes losses can be used to offset other gains, but sometimes they can't, depending on character. So just so I understand that, I think I do, is that you're saying at that point the whole thing would have been open and your client could have challenged the entire liability. But I guess my question is, maybe we have no way of knowing this, would he have? Because it doesn't appear that he understood that he had overpaid the IRS. Yeah, that's correct, Your Honor. And oftentimes that's the case. And that's even a tax court quote in a 2004 case, Montgomery, where the court considered whether in a CDP proceeding similar to here, where the underlying liability was properly issued, whether the underlying liability included amounts self-reported by taxpayers. And the tax court specifically stated that with the complexity of the internal revenue laws, that is often the case. The taxpayers do not know a mistake was made until whether by their own accord or external forces are forced to re-examine the year as a whole. That's exactly what happened here. And yes, if the notice of deficiency was received by the appellant, of course, you have to assume that he would timely have a petition to the tax court. But that's an easy assumption to make, given that you have 90 days from that time period and the appellant timely petitioned within 30 days of receiving the notice of lien in this case. Would that have been within the statute of limitations to seek a refund? So it is actually a two-step analysis. Number one, you have to, like we were just talking about, because the taxable period liability is made of all these different factors, not any one thing in isolation. You first have to look as a whole and determine the overall tax liability. And then step two is to determine how much of that, if any or of all, is still within the refund limitations period. But you have to do step one first. You have to first examine and determine the accurate tax liability for the period. And then if there are payments that are outside the statute of limitations, you're limited in how much you can get a refund for. If not, you may be able to recover the entire amounts paid. Well, the reason I ask that, Mr. Lader, is because one of the, I think the tax court opinion in this case suggests that there's a really substantial statute of limitations problem with this whole basis for seeking a refund. And I just want to know what your response is to that. Even under the best case scenario, as you have described it, would this claim for a refund have been within the statute of limitations? Yes, Your Honor. And that's actually explicitly conceded by the IRS in their answering brief. They dispute that there's jurisdiction at all. But assuming there's jurisdiction and understanding that mailing of the notice of deficiency equates to that imputed refund claim, the IRS pointed out that Appellant filed his tax return on October 15th of 2009, pursuant to a valid extension, and his payments were made as late as, or excuse me, the notice of deficiency was mailed on August 7th of 2012. So the refund period of limitations is either three years from the time the return is filed or two years from when the taxes are paid, whichever is later. So because he filed on October 15th, 2009, he had three years until October 15th, 2012, to request a refund for all the payments. And because the notice of deficiency was in August of 2012, that imputed refund claim was timely for all the payments. And he would be entitled to a full refund for all amounts paid. All right. Thank you. Can you help me understand, when I'm reading the statute, and I assume what you're trying to put your theory under is this underlying tax liability language. Help me understand how I think of underlying tax liability to refer to what you claim it to be. I'm just having a really hard time, as a textual matter, understanding how the underlying tax liability can instead be the total tax refund. They just don't seem to match up to me. What am I missing? So, Your Honor, that is definitely the threshold starting point for this analysis. And you have to understand that, and this court has explicitly acknowledged in Iams, in the 2017 case, that Congress envisioned only limited CDP review of the taxpayer's underlying liability. And that is because typically when you get into a CDP hearing, all the taxes are duly and properly owed. And to the extent that they were disputed, that means the taxpayer had a prior chance to dispute it. So, CDP hearings are primarily to say, this is going to be too economically unfeasible for me. I would have to sell my house. I wouldn't have to be able to do any of this. I need to propose a collection alternative. However, the safety net was installed for taxpayers like Mr. McClain, who never had a chance to challenge the amounts because he never received it. And so the reason that the question, the question, I understand all that. But what I'm getting at is you want to sort of use the word amounts, right? You want to use the abstract phrase instead of underlying tax liability when the CDP hearing is about a particular underlying tax liability. Not some total everything under the sun, but a very specific underlying tax liability. No. Correct. The underlying tax liability of the taxable period. That is what the statute actually says. The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period. It does not say the underlying tax liability giving rise to the leaner levy. It doesn't say the asserted deficiency. It's the underlying tax liability for the tax period. In this case, the tax period is 2008. That necessarily has to encompass the entire year's tax liability because you can't make adjustment X over here and pretend that it can never affect adjustment Y. All these different items of income and deductions and credits and exemptions have to work together. So when you make an adjustment on one side, it may have a statutory adjustment that comes with it. More Medicare tax, more less entitlement to a credit. You cannot bifurcate it or break it into even more buckets. It just would be an unworkable system that would not be in accord with the code as a whole. It's really as difficult as it is to calculate the ultimate tax liability when you are looking at it together. It's impossible if you try to split it apart. They're not in isolation. And that's why once the liability issues properly before first IRS appeals and then the tax court, you must, step one, determine the correct tax liability for the entire period. So with that in mind, then if you move to the section that allows an imputed refund claim, which is section 6512, and it's under B-1 and B-3, first under B-1, it provides jurisdictions. I'm sorry to cut you off and I'm sorry to keep harping about the statute of limitations. But I think you adequately answered the earlier question I had about how if you had the notice of deficiency that the statute would have been told once the case had started there. But, of course, you didn't have the notice of deficiency. And you're now in CDP land. And the question is, hasn't the statute of limitations to seek a refund by that time run? Your Honor, that's why I stress this, the mailing of the notice of deficiency that imputes a refund claim, not the receipt. Receipt has legal significance in other contexts. But in this case, it's a mailing. And so just as the mailing allowed the IRS to, once the time to petition the tax court expired, assess the tax liability, it also imputed the refund claim, which meant that all of his refunds in this case were timely under that. And if you go to 6512, which is the imputed refund section, 6512B-1 speaks giving the tax court jurisdiction to determine if the tax court determines there's no deficiency and that the taxpayer has made an overpayment jurisdiction to order a refund. And the only requisite is that the taxable year to which the petition relates is the year that's open to tax court at issue. And Section B3, D3B, specifically cross-references the look-back rules of 6511. And that's where you find the parenthetical whether or not filed, which, as we all can see, it doesn't matter whether he actually filed an administrative claim for refund. I see my time's expiring. Thank you very much. I think he's expired. Thank you very much. We'll hear from the government. We'll hear from Ms. Erickson. May it please the court, Mary Ann Erickson for the commissioner. As I know you all understand, this is an appeal from a collection due process hearing. When Congress enacted this statute, the purpose was to allow taxpayers one more time, one more chance, one last chance to persuade the IRS not to take some collection activity. Taxpayers have a lot of chances to talk to the IRS about their liability before you get to this stage, but Congress felt it was important for them to have one last chance. So these procedures were enacted whereby if you receive a notice that the service has filed a lien against you or that they're contemplating a levy, you can request this special kind of hearing with the independent IRS Office of Appeals. Now, in the course of the hearing, by statute, taxpayers are allowed to raise, as my opposing counsel has noted, any issue relevant to the tax liability or to the collection proceeding. For example, they could suggest that a less intrusive collection proceeding would be more appropriate, or they could raise a spousal defense or make an offer of an installment agreement or a collection alternative like that. The other thing is, if the taxpayer has not had a previous opportunity to dispute the existence or the amount of the tax they owe, either in a deficiency proceeding or in another proceeding administratively before the IRS, then they're allowed to raise that as a defense to the collection action. In other words, they will say, well, you shouldn't take this collection action because I don't actually owe this amount of tax or I don't owe you any tax. And if the taxpayer can persuade the appeals office that that is true in the course of the CDP hearing, then the appeals officer will say, okay, you're right, we're not going to go forward with this collection action, and that's the end of it. And that could have happened here if only Mr. McLean had his records in order and had presented them to the appeals officer either in the first CDP hearing or the supplemental CDP hearing that the tax court remanded because the tax court felt that Mr. McLean was giving another opportunity to present his evidence, which was... You say that could have happened at the CDP level, just so I understand it, but even there, the petitioner in this case, Mr. McLean, could not have then sought a refund of monies paid or could he have sought a refund for monies paid? Well, he could have requested that the appeals office take into account his documentation showing that he no longer had a tax liability. My understanding is that in that setting, the appeals officers are not obligated to process a refund claim. They would have advised him to file a refund claim at that point, and depending on the timing, it may or may not have been timely with respect to certain payments he had made. It just depends on the timing. As we laid out in our brief, he made payments over time of about $1,700, and I think the latest date would have been January 21st of 2014. That's the latest date that he would have been able to make a claim for refund. Just so I understand what you're saying. He could put on whatever evidence he wanted to, but the CDP hearing is only, do you have a liability and what is that liability? And that's it. That's the only authority that they have. That's the underlying tax liability point. What you're saying is independent of the CDP hearing, depending on timing and lots of other things, he might be able to seek a refund, but that's not part of the CDP hearing and that's not part of this 6330C that we're talking about. Yes, exactly, Your Honor. The CDP hearing exists only for one purpose, and that is to decide whether or not to proceed with a collection action, and that's equally true when it goes to the tax court on appeal. The tax court only has jurisdiction to decide, did the collection officer or the settlement officer and the appeals office, did he correctly decide to proceed with this collection action? And once that's been decided and once the IRS acknowledges you don't have a liability, we are not going to pursue a collection action, then the case is moved and it should be dismissed. And I think that this, many courts have held this, the tax court in the Green Thapiti case is really the seminal case in the tax court. Several courts of appeals have agreed, the Second Circuit in the Roosh case, and then the D.C. Circuit has two cases, the Byers and the Wilson case, that confirm this. There's simply no jurisdiction that it's moved once there's no liability and no collection action proposed. Had the notice of deficiency actually been, well, I guess it was mailed, I guess there's some question about whether or not it was received or maybe there isn't anymore, but had it been received and had Mr. McClain proceeded under the notice of deficiency before the IRS, he could have then brought into that proceeding an argument that he had overpaid? Is that right? Yes, that's correct, Your Honor. In a deficiency proceeding, which is what it did under 6512, when a taxpayer receives a notice of deficiency and timely petitions the tax court, then the tax court does have jurisdiction to determine an overpayment and to order a refund. That is specifically laid out in the statutory scheme, in a deficiency proceeding, in an interest abatement proceeding, or in a proceeding to determine innocent spouse. Those are the three situations where the tax court explicitly has jurisdiction to determine an overpayment. Right. Well, Mr. Lader's argument is that he was deprived of that opportunity in this case, and so this is the next best thing. Well, you know, not every taxpayer gets to have a prepayment forum. That statute specifically says, as he acknowledged, that as long as the notice of deficiency is properly mailed to the taxpayer's last known address, which it was in this case, the IRS can proceed with assessment. And it's unfortunate, but I believe that Congress decided it would be too big of a burden to make the IRS prove that it had been received in every case. Now, in the case, however, of a CDP hearing, we do have to prove that we sent it, and they do have different levels of requirements for other situations. But I understand that it seems unfair that some taxpayers have prepayment and others don't, but this is the way Congress has laid out the statute. And if you look at the history of the tax court's jurisdiction, to order a refund or even to determine an overpayment, the Board of Tax Appeals didn't even have that jurisdiction when it was first enacted. And then even a few years later, when Congress gave the tax court jurisdiction to determine an overpayment, they still didn't have jurisdiction to order a refund be paid, not until I believe it was about 1988 when they finally got that jurisdiction. And I also want to point out that all three of the situations in which the tax court explicitly has jurisdiction to determine an overpayment, those situations are also explicitly made, connected to the statutes of limitations on refunds. So, unless these claims are timely made within the 6511, 7422 statute of limitations on refund claims, they cannot be considered by the tax court either. So what about the argument that tax liability in the abstract connotes not just a portion of the liability, but the entire amount that was collected by the IRS, whether early on as a result of the taxpayer's filing of his return or later, in this case, by virtue of this lien and levy process? Why isn't that right? That in order to calculate tax liability, you've got to start, you've got to begin and end with the entire liability. Well, if I understand your question correctly, I think the answer is that in a CDP hearing, the purpose is not to calculate exactly how much you owe or don't owe. First of all, liability means something that you, the taxpayer, owe. And so if you've overpaid, you do not have a liability. And that's exactly what the CDP proceeding is designed to do, determine whether or not you have a tax liability. And if you do, whether or not the service should proceed to collect it in the manner they have proposed to collect it. If you don't have a liability, that's the end of the story in a CDP hearing. It's a very limited jurisdiction for a limited purpose. It's not, as the taxpayer here posits, an opportunity to insert a deficiency proceeding into the tax court. When in this instance, for example, the taxpayer never even made the argument that he was entitled to a refund in the CDP hearings. So the tax court's jurisprudence in this situation is only to review what the Office of Appeals did. And if the Office of Appeals didn't even consider a refund claim, how could the tax court rule on that? That sounds like a waiver argument. Did you make a waiver argument in your brief? I don't think we explicitly did, no. If the court has no further questions, I'd just like to say that I believe the taxpayer here fundamentally misapprehends the purpose and the statutory structure of the CDP scheme. The Congress enacted this legislation for a limited purpose, only to determine whether or not a collection action should proceed. Congress did not intend that you could simply turn it into a deficiency proceeding just because the taxpayer did not receive a notice of deficiency. That was not Congress's intent. That is not what the statute says. And no court has ever held the taxpayer's favor on this issue. We would respectfully request that the court affirm the decision of the tax court. Thank you. Thank you very much. Mr. Lehner, you have rebuttal? Thank you, Your Honors. I believe the government completely is ignoring the applicable statutory provision. Yes, CDP hearings are primarily to determine whether a collection action can move forward, but their position fundamentally ignores Section C-2B about the underlying liability. That is a separate consideration. So when she says that the case would be moot if the IRS determined not to move forward with a collection action, that only applies when Section C-2B, allowing the taxpayer to challenge the underlying liability, is not operative. Because the underlying liability was probably before the Court of Appeals. I'm sorry. I just want to make sure I understand what you're saying. She just said, she's not ignoring it. She reads the words underlying tax liability to refer to underlying tax liability and not the total tax refund or liability. Right? I mean, I guess I'm just having a hard time. I want to make sure that, I mean, you have an argument to the contrary, but it suggests that she's ignoring the words. I mean, she just reads the words to mean something different than you do. Your Honor, I would argue that the government is superimposing a statutory language that's not there, that says that the only purpose of a CDP hearing is to determine whether a collection can proceed. And when you read underlying liability provision, that does not directly say, if the IRS concedes there's no additional underlying liability, such that there's no levy, then there's no case or controversy to take to court. That requirement is not imposed, and that is why I say they're ignoring this provision on its own. They're superimposing a statutory language that only allows underlying liability in the context of a collection action. And that is just not what the statute says. And although we contend that the statutory language is clear, to the extent you need to look at congressional intent, it's even more clear that taxpayers were inadvertently missing out on the prepayment form to challenge the entire open year when the IRS makes an adjustment. And Congress very carefully crafted this safety net within the framework of a CDP collection due process hearing in very limited circumstances that everyone agrees apply here. Liability is an issue as well. Liability concerns assessments. Liability concerns assessment because assessment is a recording of something that you owe. Are there other examples that you point to me in the Internal Revenue Code where the term liability refers to a refund? In the code, I cannot off the top of my head. I'd be happy if I come up. No, no. I thought maybe you might have an example where it might be. That's fine. However, I can point out that just a few months ago, the Seventh Circuit had a case, Jeffers. And in Jeffers, the salient difference was that Jeffers absolutely had a prior chance to dispute the liability. And so this provision did not come into play. So Jeffers made the creative argument that a refund is an alternative collection action. And while this precise issue wasn't before the Seventh Circuit, the court said, and I quote, refunds concern underlying liability. They rejected the idea that a refund was a collection action and specifically says an underlying liability. So while that issue wasn't before the court, to me, it's common sense. Congress enacted procedures to catch taxpayers that would fall through the cracks and lose out on the opportunity to fully and correctly determine the taxable period liability once the IRS made an adjustment. And so that's what this court said when it said Congress... Just a later, can I ask about that when you say they lose the opportunity, but even without the notice of deficiency, which admittedly in this case wasn't received, that doesn't mean that the taxpayer can't on his or her own still challenge an overpayment, right? Once they become aware of it, it just seems in this case, based on this record evidence, that your client, for whatever reason, just didn't know until he got to the CDP hearing that he had overpaid. That's correct, Your Honor. And that is just the risk that the IRS takes when it says when the IRS issues a notice of deficiency, the notice in the part of the due process idea of notice and opportunity to be heard is not that the only possibility is that you owe this one more dollar or one more million dollars. The notice is that your taxable period is being reopened and we're going to say you owe a lot more. And the counterbalance to that is the taxpayer gets to say, hey, not only do I not owe more, I actually overstated what I owed. I owe less. And so you can't have an arbitrage-like scenario. And the Taxpayer Bill of Rights really, whether they're independently enforceable, they really speak to these points of finality, of fairness, of paying the correct amount of tax. And these are provisions in the CDP context that are very clearly designed to prevent the inadvertent because, as we all know, Mr. McClain did not refuse delivery. And there's case law out there saying you can't refuse or evade delivery and then be able to challenge your liability in a CDP context. So this is really designed as remedial legislation to prevent the types of unfairness that are applying here and to say, well, if there's nothing that you did wrong, you did everything right. Once you finally got the notice actually received, you should be in the same shoes as had you received an NOD. And that is exactly the outcome that we're advocating for. And the IRS is trying to advocate, opposing counsel, Ms. Erickson, even said that it would be unfair. And our point of view is that Congress remedied that. And the statutory provisions clearly understand that if you don't receive an NOD, the IRS still has to give you the right to go to a CDP before they can take your property and take your money. And that's why these limited subset of taxpayers like Mr. McClain have the opportunity to challenge the underlying liability there. All right. Unless we have, I don't think we have further questions. Thank you very much for your argument. Thank you very much.
judges: Diana Gribbon Motz, Albert Diaz, Julius N. Richardson